IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 19-3161 |
| | ) | |
| DOLGENCORP, LLC, | ) | JURY TRIAL DEMANDED |
| *Serve Registered Agent*: | ) | |
|    CSC- Lawyer Incorporating Service | ) | |
|    221 Bolivar St. | ) | |
|    Jefferson City, Missouri 65101 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Michelle Rogers, by and through her attorneys of record, Hall Ansley, P.C., and for her cause of action against Dolgencorp, LLC, states, alleges and avers to the Court as follows:

### PLAINTIFF

1. Plaintiff Michelle Rogers (hereinafter "Plaintiff") is a person of lawful age residing in Sparta, Christian County, Missouri.

### DEFENDANT

2. That at all times herein mentioned, defendant Dolgencorp, LLC ("Doller General"), was and now is a Kentucky limited liability company, duly organized and existing under the laws of the State of Kentucky. Defendant Doller General can be served through its registered agent at the address provided in the caption.

1

3. At all times relevant herein, Dollar General was engaged in operating a retail store in Branson, Taney County, Missouri, and upon information and belief, was, at all times mentioned herein, acting by and through its duly authorized agents and servants and employees.

4. At all times relevant, Dollar General was considered an employer under the FLSA.

## VENUE AND JURISDICTION

5. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) and because Dollar General has caused events to occur in the Western District of Missouri, out of which Plaintiff's claims arise.

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by Dollar General as a regional training manager. Prior to her termination Plaintiff was also taking part in the District Manager Training Program. Plaintiff typically worked out of a store in Christian County, Missouri.

8. As part of the training program, on or about February 12, 2018, Plaintiff was at store 18700 (in Branson, Taney County, Missouri) investigating electronic base exception reports ("EBRs") for District Manager Bill Guffey ("Guffey"). Plaintiff was investigating the EBRs to determine whether or not the transactions at the store were appropriate and to check for potential fraud.

9. An employee of the Branson store, Regina, told Plaintiff that the employees' hours were being adjusted to meet payroll. Plaintiff investigated the issue and took pictures from the computer showing that employee work hours were being manipulated. Plaintiff sent this

2

information to Guffey. Plaintiff had a discussion with Guffey over the phone after sending the information. During the call Plaintiff reported and complained that employee hours were being manipulated for payroll purposes. For example, Plaintiff reported and complained to Guffey that one of the employees arrived at 3:00 but her payroll records had been manipulated to reflect a 4:00 arrival.

10. After the conversation Plaintiff was not satisfied that Guffey would take any action in response to the issue she had reported. Plaintiff immediately attempted to contact Tom Barding ("Barding") at Regional Loss Prevention. Barding did not answer and Plaintiff left a detailed message regarding the issue.

11. Plaintiff and Guffey had dinner on or about February 28, 2018. Guffey asked Plaintiff whether she was on "his side" when it came to training store managers in the district. Plaintiff told Guffey that she would train managers in accord with standard operating procedures and correct processes.

12. On or about March 9, 2018, Guffey came to Plaintiff's store location and had a confrontation with Plaintiff as to whether or not he would recommend her for a District Manager position. Guffey told Plaintiff that if she did not let the wage an hour violations go he would notify Plaintiff's supervisors that she would not be a good fit for a District Manager position. Guffey also told Plaintiff that he believed she was under investigation for training issues.

13. On or about March 11, 2018, Plaintiff reached out to the Regional Director, Tod Boyster ("Boyster"), regarding the encounter on March 9. Boyster instructed Plaintiff to reach out to a District Manager named Randy Johnson ("Johnson"). On or about March 12, 2018, Plaintiff reached out to Johnson and told him about the encounter on March 9. Johnson informed Plaintiff that he would take care of the issue.

3

14. On or about March 20, 2018, Boyster reached out to Plaintiff to see if the situation had resolved. Plaintiff informed Boyster that she felt like retaliation was still ongoing. Boyster told Plaintiff he would be soon setting a time for them to meet.

15. On or about April 10, 2018, Guffey requested that Plaintiff undergo a full Loss Prevention Audit. The surprise audit was conducted by Barding, Guffey, and Plaintiff.

16. During the Loss Prevention Audit Plaintiff spoke to Barding about potential wage and hour violations. This conversation took place on or about April 16, 2018.

17. The Loss Prevention Audit of Plaintiff's store resulted in a score of 87/100 – the highest score in the Region.

18. A 90-day follow up audit was conducted on or about June 1, 2018. Plaintiff received a score of 91/100 – again, the highest in the Region.

19. Between June 2, 2018 and June 9, 2018, Tom Cook ("Cook"), another District Manager, and Plaintiff covered the District while Guffey was out on vacation. During this time Plaintiff told Cook about questionable activities involving Guffey—including potential wage and hour violations. Plaintiff and Cook traveled to stores with wage and hour violations and paperwork alterations.

20. On or about July 11, 2018, Plaintiff received a call from Boyster about a special recognition to be awarded to Guffey for being an outstanding District Manager. Plaintiff was tasked with gathering Store Managers to participate in a conference call and a videotaped presentation to be conducted at Plaintiff's store location.

21. On or about July 17, 2018, Plaintiff was visited by Regional Director Janie Farris ("Farris") regarding the upcoming presentation. Plaintiff and Farris discussed the potential wage

4

Case 6:19-cv-03161-LMC   Document 1   Filed 05/03/19   Page 4 of 8

an hour violations and the retaliation that Plaintiff had encountered since reporting the issue. Farris (along with Boyster) travelled to various stores to look at the issues Plaintiff had raised.

22. On or about July 23, 2018, Plaintiff received a call from Farris. During the call Plaintiff was informed that Farris and Boyster had found issues with the other stores and that an investigation would be conducted.

23. On or about July 25, 2018, Plaintiff again discussed the issues with Boyster and Farris. Boyster and Farris told Plaintiff that they were still looking into the report. In contrast to what Guffey had said on March 9, 2018, Boyster and Farris informed Plaintiff that she was not under investigation.

24. Between August 11, 2018 and August 14, 2018, Plaintiff attended a trip to Nashville paid for by Dollar General.

25. Plaintiff received three awards (for Sales, In Stock, and Overall Satisfaction) on or about August 23, 2018.

26. On or about August 28, 2018, Guffey and Johnson called Plaintiff to the office and informed her she was being terminated. Guffey told Plaintiff that there was a wage and hour investigation and that the company had determined that she no longer needed to work for the company. Plaintiff called and told Farris that she was being terminated for the wage and hour investigation. Farris told Plaintiff that she was not aware of the termination and instructed Plaintiff to call human resources. Plaintiff was terminated from her position at the Christian County, Missouri store.

## COUNT I – FLSA RETALIATION

27. Section 29 U.S.C. § 215(a)(c) makes it unlawful for any person "to discharge or in any other manner discriminate against an employee because such employee has filed any

5

complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceedings, or has served or is about to serve on an industry committee."

28. The Fair Labor Standards Act defines person as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §203(a).

29. Dollar General is a person pursuant to the Fair Labor Standards Act.

30. 29 U.S.C. § 203(e) defines an employee as any individual employed by an employer.

31. 29 U.S.C. § 203(d) defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

32. At all times relevant Plaintiff was an employee of Dollar General as defined by the Fair Labor Standards Act (29 U.S.C. § 201, et seq.).

33. The Fair Labor Standards Act requires employers to pay each non-exempt employee for all hours worked during a work week. 29 U.S.C. § 206.

34. 29 CFR Part 516 of the Code of Federal Regulations requires employers to keep accurate records of the time worked by a non-exempt employee on behalf of said employer.

35. As described above, Plaintiff made informal complaints relating to the shaving and shifting of employee time in violation of the Fair Labor Standards Act. Plaintiff also made informal complaints regarding the alteration of non-exempt employee time records related to the hours worked by each employee.

36. Dollar General understood that Plaintiff was making complaints regarding potential wage and hour violations in that such wage and hour violations were repeatedly referenced with members of management and Plaintiff was told she was being terminated due to the ongoing wage and hour investigation.

37. Dollar General took adverse action against Plaintiff in terminating her employment.

38. A causal nexus exists between Plaintiff's protected activities and the adverse action taken by Dollar General against Plaintiff's employment.

39. As a direct and proximate result of Dollar General's termination of Plaintiff, Plaintiff has suffered lost wages and benefits which she would have received had she remained employed.

40. As a direct and proximate result of Dollar General's actions, Plaintiff has suffered emotional distress and mental anguish.

41. Defendant's conduct was outrageous because of Dollar General's evil motive or reckless indifference toward the rights of Plaintiff, and is such that an award of punitive damages is warranted to deter and punish Dollar General from such conduct.

42. Plaintiff is entitled to liquated damages pursuant to 29 U.S.C. § 216(b).

43. Plaintiff is entitled to equitable relief including reinstatement pursuant 29 U.S.C. § 216(b).

44. Plaintiff is entitled to a reasonable attorney fee as well as the costs of this action pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant and asks the Court to:

    A.    Issue an order awarding Plaintiff back pay, front pay, and any other appropriate relief necessary to make Plaintiff whole and to compensate Plaintiff for the legal violations described above;

    B.    Award Plaintiff damages for the mental and emotional distress suffered on account of Dollar General's actions;

    C.    Award Plaintiff punitive damages to deter and punish Dollar General for its evil motive and reckless indifference to Plaintiff's federally protected rights;

    D.    Award Plaintiff liquidated damages;

    E.    Award Plaintiff attorney fees and costs of this action; and

    F.    Award Plaintiff such other legal and equitable relief as this court deems just and proper, including, but not limited to, reinstatement to her former position.

                      HALL ANSLEY,
                      A Professional Corporation

                      By: /s/ *Timothy A. Ricker*
                            BENJAMIN A. STRINGER
                            Missouri Bar Number 50415
                            TIMOTHY A. RICKER
                            Missouri Bar Number 62050

                            3275 East Ridgeview
                            Springfield, Missouri  65808
                            Telephone:    417/890-8700
                            Facsimile:    417/890-8855
                            Email: bstringer@hallansley.com
                            Email: tricker@hallansley.com

                            *Attorneys for Plaintiff*